CITY OF WINONA *v.* MONTGOMERY COUNTY.

(Division A.   May 21, 1934.)

* [155 So. 169.   No. 31269.]

Knox & Horton and J. W. Conger, all of Winona, for appellant.

**V. D. Rowe**, of Winona, and **A. L. Ford**, of Ackerman, for appellee.

**McGowen, J.,** delivered the opinion of the court.

Appellant, city of Winona, sued Montgomery county, in an action at law, for one-half of the ad valorem taxes collected for it from its citizens on property within its limits for road purposes. After the pleadings were made up, and at the trial, all the items of the county save four were eliminated by an agreement that one hundred twenty-five dollars was due as to the several items eliminated.

The city demanded of the county payment of the following items: three thousand seven hundred thirty-three dollars and ninety-two cents, tax levy collected for the year 1929 under the heading "To Repay Borrowed Money;" one thousand five hundred fifty-four dollars and fifty-four cents, under tax levy and collection upon "Special Machinery and Oil," for the year 1930; three thousand four hundred nineteen dollars and ninety-nine cents,

tax levy collected for the year 1930 under the heading "To Repay Borrowed Money;" and one thousand one hundred sixty-seven dollars and twelve cents, tax levy and collection for the year 1930 under heading, "District No. 1 Mt."

The declaration alleged that all these sums were the proceeds of ad valorem taxes levied and collected within the city of Winona, and represented one-half of its net collections. Issue was finally joined on one plea filed by the county, in addition to a plea of the general issue, and that plea is as follows:

"City of Winona v. Montgomery County.
"No. 3033.
"Special Plea.

"Now comes the defendant Montgomery county, by its attorney, with leave of the court first had and obtained, and files this a special plea as to the following items contained in plaintiff's declaration for recovery thereon against defendant in this cause, to-wit:

"The item in the recapitulation filed with plaintiff's said declaration under the heading 'Special Machinery and Oil,' wherein the balance claimed as due Winona is one thousand five hundred fifty-four dollars and fifty-four cents, under tax levy and collection for the year 1930;

"And the items under the heading 'To repay borrowed money,' wherein the balances claimed as due Winona in the sum of three thousand seven hundred thirty-three dollars and ninety-two cents and three thousand four hundred nineteen dollars and ninety-nine cents under tax levies and collections for the years 1929 and 1930, respectively; and the item under the heading 'District No. 1 Mt.,' wherein the balance claimed as due Winona the sum of one thousand one hundred sixty-seven dollars and twelve cents, under the tax levy and collection for the year 1930;

"And as to these items in plaintiff's said declaration

contained the defendant says action non, etc., because it says that:

"1st. As to the said item of one thousand one hundred sixty-seven dollars and twelve cents, the defendant says the same is incorrect, and the sum of four hundred ninety-four dollars and sixty-nine cents, is the correct sum, arrived at in the following manner; a tax of two and one-half mills on the dollar was levied in 1930 on Road District No. 1 for the purpose of maintenance of roads therein and to pay debts due and payable Feb. 1, 1931; and this tax on the entire district No. 1 at the assessed valuation therein of two million two hundred sixty-two thousand seven hundred forty-five dollars amounted to five thousand five hundred sixty-eight dollars and forty-nine cents and of this the sum of three thousand sixty-four dollars and twenty-two cents was collected on property inside city of Winona, the assessed value of property in the city of Winona for this levy of taxes being one million two hundred fifty-seven thousand one hundred twelve dollars; and the total amount of debts referred to for machinery being two thousand three hundred dollars and the city of Winona's pro rata share of said debts being one thousand three hundred dollars; which deducted from three thousand sixty-four dollars and twenty-two cents collected on property inside of said city, as aforesaid, leaves the sum of one thousand seven hundred forty-six dollars and twenty-two cents, to be divided between the said city and the said county equally, which nets the said city the sum of eight hundred eighty-two dollars and eleven cents, upon which there has been paid to said city by the said county the sum of three hundred eighty-seven dollars and forty-two cents, thus leaving a balance due said city by said county in the sum of four hundred ninety-four dollars and sixty-nine cents, as aforesaid:

"2nd. As to the said item of one thousand five hundred fifty-four dollars and fifty-four cents under tax levy and collection for the year 1930 for the purpose of

paying for machinery and oil, and debts therefor, defendant says that this entire amount was so levied and collected for said purpose and actually paid out for said machinery, oil and debts, and not a part of it was used in maintenance of roads;

"3rd. As to the item of three thousand seven hundred thirty-three dollars and ninety-two cents and the item of three thousand four hundred nineteen dollars and ninety-nine cents levied in 1929 and 1930, the said sums were collected solely for the purpose of repaying money borrowed by the county for the purpose of paying debts incurred in the purchase of machinery and other supplies necessary for use in the construction and reconstruction of one hundred ten miles of graveled public roads in said county and no part thereof was expended for maintenance of roads.

"And this the defendant is ready to verify," etc.

By agreement, the county admitted that it owed the city, exclusive of the items above set forth, the sum of one hundred twenty-five dollars; and it further agreed, as to the item of one thousand one hundred sixty-seven dollars and twelve cents, that it owed the city five hundred dollars of that item, but if certain payments for purchase money of machinery were not allowed, then it would owe the city the entire item. It was also agreed that the city had presented the account sued on to the board of supervisors, and that same had been rejected.

By agreement, the judge of the court tried the case; and, after hearing the evidence, rendered a judgment in favor of the city for six hundred twenty-five dollars, but declined to allow the balance of the city's claim, because, in its opinion, the proof showed that the money was expended for the construction and reconstruction of one hundred ten miles of road.

The court overruled the demurrer of the plaintiff, the city of Winona, to the special plea set forth above, and thereafter the city joined issue on that plea. The de-

murrer was to the effect that matters set forth in the plea constituted no defense to the action.

It is shown by the several orders introduced in evidence that the board of supervisors, in April, 1929, and April, 1930, published its notices of intention to borrow money to be used in maintaining the public roads of the county for the remainder of each of those years, and that it did so; and, according to the evidence, expended it on the public roads of the county in the "construction" and "reconstruction" of roads, as said by counsel, and thereafter each year at its November meeting, the board levied a tax which it denominated "General County Special Fund," to repay the borrowed money. The evidence shows that when the money was borrowed, it was credited to the county road funds. As to the other items, there was a levy to pay the debts created by the purchase of road machinery and gas and oil bought by the county, on credit, under the authority of section 6382, Code 1930, to be used in the construction and reconstruction of public roads.

Prior to these levies, the board of supervisors of the county had issued bonds for the improvement of the roads of the county; and, after these bonds had been issued, the board decided that the county should prepare the roads therein for the placing of gravel thereon at the general expense of the county without the expenditure of any of the bond money for that purpose, and that the money received from the bond issue was to be expended only in spreading gravel on about one hundred ten miles of road. The money borrowed and the machinery bought were used in pursuance of this plan.

Counsel for the county stress emphasis on the manner in which the board expended the money rather than the purpose for which the taxes were levied and collected. The position of the county is thus stated in their brief. "We contend that the law does not require division of the funds raised by the tax levies involved in this cause with the municipalities, because said funds are not main-

tenance funds. These funds were raised by tax levies to repay borrowed money, used in the construction and re-construction of one hundred ten miles of public roads, and large amounts of which, as shown by the testimony, were used in the purchase of machinery, supplies and labor necessary to construct new roads and reconstruct a lot of crude roads and make same ready for the gravel to be furnished by the bond issue. There is a wide dif-ference between such expenditures and expenditures for maintenance such as the law contemplates." Counsel make no distinction between the collection of taxes from the municipality for the year 1929 and that of 1930, which fact demonstrates the unsoundness of their argu-ment.

Chapter 232, section 1, Laws 1920, provides: "That one-half of all ad valorem taxes collected by or for a county . . . on property within a municipality, the streets of which are worked at the expense of the mu-nicipal treasury, or worked by municipal authority, for road purposes of such county . . . shall be paid over to the treasurer of such municipality for said munic-ipality;" and the city authorities, pursuant to this sec-tion, in 1927, adopted a resolution claiming its share of the ad valorem taxes collected within its borders, and promptly delivered a copy of said resolution to the board of supervisors. That the city of Winona worked its streets by municipal authority at the expense of the municipal treasury is undisputed.

It will be observed that the broad language of the stat-ute is that the municipality is entitled to one-half of the tax levied upon the property of its citizens for road pur-poses; it is inconceivable that the legislature could have used broader language—language which, under any con-sideration, is bound to include the items here involved.

But it is argued by counsel for the county that by chapter 227, Laws 1926, it is thus provided: "When any tax shall be levied for the maintenance of any certain improved road, or roads, that such tax shall be used sole-

ly for the purpose of maintaining such road or roads and for no other purpose.'' Section 1. And again counsel say that the legislature, in 1928, enacted chapter 129, which was an act to amend chapter 227, Laws 1926, of which section 1 states: ''Whenever any tax shall be hereafter levied for the maintenance of any certain improved road or roads or for the maintenance of the roads of any good roads district or separate road district the proceeds of such tax shall be used solely for the purpose for which it may be levied and for no other purpose. Provided, however, that where any municipality shall be entitled to a portion of the tax so levied under the provisions of chapter 232 of the Laws of 1920, such portion of the tax so levied and collected shall be paid to such municipality, for the benefit of its street department, anything herein contained to the contrary notwithstanding.''

Counsel seem to argue that the use of the word ''maintenance'' in the last two quoted statutes amends and strikes from chapter 232, Laws 1920, the words ''for road purposes.'' It is manifest that the Laws of 1928, just quoted, provided only that certain improved roads which by the Act of 1926 had been excluded from the operation of the Laws of 1920 should again be read into the Laws of 1920, supra. Counsel for the county overlook the fact that by the adoption of section 6417, Code 1930, the legislature construed its own action, and that said section thoroughly disposes of their contention in so far as the taxes levied and collected in the year 1930 by the order of the board of supervisors levying the taxes on November 5th of that year. Section 6417, Code 1930, is as follows:

''*To Refund to Municipalities Certain Road Taxes Collected.*—One-half of all ad valorem taxes collected by or for a county or a separate or a special road district on property within a municipality (the streets of which are worked at the expense of the municipal treasury, or worked by municipal authority) for road purposes of such county or district, not including taxes for the pur-

poses of paying bonds issued for road purposes or the interest thereon or for creating a sinking fund for retiring the same, shall be paid over to the treasurer of such municipality for said municipality."

The purchase of road machinery, and the gas and oil with which to operate it, the employment of labor, and purchase of material otherwise to go on the road, the straightening and grading of roads already in existence, and all the multitude of things incident and necessary in the construction of a public road, as well as the maintenance thereof, are, in our opinion, for road purposes; and we think this court has so declared. The fact that money was borrowed for road purposes is undisputed; the fact that a tax was levied with which to repay borrowed money for road purposes is undisputed, except for the refined distinction offered by counsel between the terms "maintenance of roads" and "construction and reconstruction of roads," which, in our opinion, are embraced in the term "for road purposes," and, in our judgment, since 1920, has been the guiding star so far as a municipality's right to share in the taxes is concerned.

In the case of Gully, State Tax Collector, v. Attala County, 165 Miss. 86, 145 So. 907, 908, the court said: "All those essential things which go to make, and into the making and maintenance of, a complete public highway" are included in the term "road purposes," in which case the county undertook to claim that bridges were not included in the language "for road purposes."

Leaving out of view the earth on which the road is situated, there are certainly three necessary things which go into and make up a road, both in its construction and maintenance, and these are: Supplies, such as gravel, sand, concrete, asphalt, or any other substance of which the road is constructed; the labor necessary and essential to the construction or maintenance of it; and the machinery and tools necessary to be utilized by the labor in the construction and maintenance of the road. You can no more engraft an exception as to the machinery

and oil used for road purposes and in the construction thereof or maintenance than can you engraft an exception as to gravel, concrete, wood, or lumber which goes into a bridge which becomes a part of the road. Construction and reconstruction are road purposes within the purview of the act.

There is no contention that any portion of the taxes herein levied and collected was in the slightest degree connected with any bond issue or interest thereon, or sinking fund created therefor, there being no question but that the money borrowed went into the county treasury and was appropriated by the county to the road fund thereof, and in this case used therefor. As to the fact that the tax was levied, and the money borrowed for road purposes, we think this case is controlled by the Town of Purvis v. Lamar County, 161 Miss. 454, 137 So. 323, and Gully, State Collector, v. Attala County, 165 Miss. 86, 145 So. 907.

The plea interposed in this case did not set up a defense to the action, nor is the evidence stronger in defense than is the plea. The court below should have allowed these four items, in addition to the one hundred twenty-five dollars agreed to be due on the other items.

The case will be reversed and judgment entered in accordance herewith.

Reversed and judgment for appellant.